794 July 29, 2026 No. 712

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RYAN PHILLIP VILCHES,
*Defendant-Appellant.*

Multnomah County Circuit Court
23CR43832; A182960

Christopher A. Ramras, Judge.

Argued and submitted September 30, 2025.

Bruce A. Myers, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Michael A. Casper, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Defendant appeals his conviction for felon in possession of a restricted weapon, ORS 166.270(2). He assigns error to the trial court's denial of his motion to suppress evidence. We conclude that the officer's posing of six sequential questions to ascertain the identity of defendant, a passenger in a stopped vehicle, did not constitute a seizure under the circumstances. Therefore, we affirm.

We "review a trial court's denial of a motion to suppress for legal error," *State v. Gilliland*, 347 Or App 256, 259, 587 P3d 394 (2026), and "are bound by the trial court's factual findings to the extent that those findings are supported by evidence in the record," *State v. Arreola-Botello*, 365 Or 695, 697, 451 P3d 939 (2019). "[I]f the trial court does not make findings on all pertinent historical facts and there is evidence from which those facts could be decided more than one way, we will presume that the trial court found facts in a manner consistent with its ultimate conclusion." *Id.*

We briefly state the relevant facts in accordance with that standard. An officer stopped a car that had two occupants, a driver and passenger-defendant. The officer told the driver that he had stopped them due to the lack of license plates. The driver responded that she had "just got [the car] from a friend." The officer said, "Gotcha," then asked for the driver's license and insurance. The driver did not have the documentation, and, upon the officer's request, began searching for something with her name on it.

The officer then shifted his focus to defendant, and the following exchange occurred:

"Officer:   And, sir, do you have your driver's license?

"Defendant:   No.

"Officer:   No. Do you have ID with you today?

"Defendant:   No.

"Officer:   Anything with your name on it? * * *

"Defendant:   No.

"Officer:   * * * [W]hat's your last name?

"Defendant:   Rickard.

"* * * * *

"Officer:   Rickard. Okay. First name?

"Defendant:   Nick.

"* * * * *

"Officer:   And what's your birthday?

"Defendant:   January 2nd, 1994."

The officer subsequently discovered that the vehicle was sto-
len, and that defendant had provided a false name and had
a warrant out for his arrest. When arresting defendant, the
officer found brass knuckles in his pocket.

Before trial, defendant filed a motion to suppress
"all physical evidence seized and statements obtained from
defendant" that resulted from his unlawful seizure under
Article I, section 9, of the Oregon Constitution. Defendant
argued that the officer's inquiry into defendant's identity
amounted to an unlawful seizure because the officer's con-
duct "made clear" that defendant was subject to criminal
investigation for a suspected stolen vehicle.

At the motion to suppress hearing, the officer testi-
fied to the above events and that when he stopped the car, he
believed that there was "potential for it to be a stolen vehi-
cle." His bodycam footage was also admitted into evidence.

The court denied the motion to suppress, ruling
that there was no "seizure of the defendant at the time his
name was taken." In doing so, the court found that the offi-
cer's "relatively neutral" questions as to the status of the car
"were focused towards the driver, not [defendant]," and that
there "was no confrontation" with either occupant that the
car was stolen, nor "any real direct allegations whatsoever."
Defendant entered a conditional guilty plea under ORS
135.335(3), reserving the right to appeal the trial court's
ruling. This appeal followed.

As presented by defendant, the narrow issue in this
case is whether the officer seized defendant "when he per-
sistently asked him for identification." Defendant argues that
the officer's request for identifying information constituted

a seizure because, given the driver's "implausible" story about how she came to possess the car, "the officer clearly suspected that defendant was riding in a stolen vehicle." Therefore, defendant reasonably understood that he was subject to criminal investigation and not free to leave the police encounter. We disagree with defendant's arguments.

For purposes of Article I, section 9, "a seizure occurs when (1) a police officer intentionally and significantly interferes with an individual's liberty or freedom of movement; or (2) a reasonable person, under the totality of the circumstances, would believe that his or her liberty or freedom of movement has been significantly restricted." *Arreola-Botello*, 365 Or at 701.

Passengers in a traffic stop are "not seized merely by virtue of their status as passengers." *State v. Vannoy*, 326 Or App 11, 18, 530 P3d 503 (2023). Rather, "some further show of authority must extend to or be directed at the passenger specifically, such that a reasonable person would understand that the officer was independently restricting their movement apart from the stop of the driver." *Id.* (internal quotation marks omitted). Although it is possible to seize a passenger by "purely verbal means," "[s]omething more than just asking a question, requesting information, or seeking an individual's cooperation is required, as mere requests where the officer does no more than seek the individual's cooperation through noncoercive questioning * * * do not implicate Article I, section 9." *Id.* at 17-18 (internal quotation marks omitted).

Importantly, "a request for identification does not, without more, convert an encounter between an officer and a citizen that is not a seizure for constitutional purposes into one that is." *State v. Highley*, 354 Or 459, 468, 313 P3d 1068 (2013); *see also State v. Acosta Parra*, 347 Or App 216, 224, 587 P3d 419 (2026) (noting that "certain innocuous questions, such as asking a passenger to identify themselves, will never rise to the level of a seizure"). Rather, whether a verbal exchange amounts to a seizure depends on "the content of the questions, the manner of asking them, or other actions that the police take (along with the circumstances in which they take them)." *Vannoy*, 326 Or App at 18. For

example, an officer's request for identification may constitute a seizure if the circumstances "suggest to reasonable people that they would be detained if they either would not, or could not, produce identification" or if the officer "directly and unambiguously communicates that he or she is conducting an investigation that could result in the individual's arrest or citation." *State v. Almahmood*, 308 Or App 795, 801-02 482 P3d 88 (2021) (internal quotation marks omitted).

Here, the officer's conduct did not effectuate a seizure. While the driver searched for some form of identification in response to the officer's request, the officer asked defendant a series of six distinct questions to discern his identity. The fact that there were six questions and that they were asked consecutively did not render them coercive. The sequential nature was simply responsive to defendant's answers. The first three questions established, in turn, that defendant carried neither a driver's license, nor another form of official identification, nor another item bearing his name. Given that defendant could not provide any written identification, the officer then asked three more questions in succession, which allowed the officer to obtain defendant's first name, last name, and birthdate. In sum, those six questions amounted to nothing more than an officer's request for identification, which is not a seizure under our case law.

We also reject defendant's assertion that the officer's otherwise innocuous request for defendant's identifying information "transformed" into a seizure because, under the circumstances, defendant reasonably believed that he was subject to criminal investigation related to the use of a stolen vehicle. Here, the officer did not "unambiguously communicate[]" that he was investigating defendant for criminal activity. Specifically, the officer did not relay his private suspicion that the car was stolen in such a way that defendant, when asked for his identification, would reasonably believe that he was subject to criminal investigation and could not leave lawfully. *Cf. Vannoy*, 326 Or App at 19-21 (holding that the officer's line of questioning constituted a seizure of a passenger-defendant, because, under the totality of circumstances, a "reasonable person * * * would believe that both the driver *and* defendant were the subjects of an

investigation into whether they illegally possessed marijuana" (emphasis in original)); *Acosta Parra*, 347 Or App at 223-24 (concluding that the officer seized a passenger-defendant when the questions shifted from "basic identification questions" to those "more personal to defendant * * *, reflecting a suspicion that *defendant* might have done something wrong" (emphasis in original)). Indeed, the trial court found that the officer's questions as to the car's status were directed toward the driver, that those queries were "relatively neutral," and that the officer did not advance "any real direct allegations" that the car was stolen during the encounter.

Further, the two cases defendant relies on— *Almahmood* and *State v. Stevens*, 364 Or 91, 430 P3d 1059 (2018)—are distinguishable because those cases involved more direct communication that the defendant was not free to leave. Unlike the above cases, the officer's mere request for defendant's identification in this case did not function to "establish that [defendant] had not committed a crime," *Almahood*, 308 Or App at 803-04, nor implicated any "inextricable," and potentially criminal, association between defendant and the driver, *Stevens*, 364 Or at 102, nor did it coerce defendant to answer or stay at the scene by a threat, implicit or explicit, of criminal repercussions, *id.*; *Almahood*, 308 Or App at 803-04.[1]

Affirmed.

---

[1] Because we affirm the court's denial of the motion to suppress on the basis that no seizure occurred, we need to not address defendant's alternative argument that any seizure was unlawful for lack of subjective probable cause.